TARA K. MCGRATH
United States Attorney
FRED SHEPPARD, CBN 250781
W. MARK CONOVER, CBN 236090
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | Case No.: 13CR3781 |
| --- | --- |
| | 13CR3782 |
| | 13CR4781 |
| | 24CR_____ |
| v. | |
| LEONARD GLENN FRANCIS, | **SENTENCING MEMORANDUM** |
| Defendant. | Date: November 5, 2024 |

    The UNITED STATES OF AMERICA, through its counsel, Tara K. McGrath, United States Attorney, and W. Mark Conover and Fred Sheppard, Assistant U.S. Attorneys, hereby files its Memorandum in Support of Sentencing.

    Over the past decade, this Court has heard U.S. Navy personnel from petty officers to Admirals admit their corruption and betrayal at the behest of Leonard Francis and his company, Glenn Defense Marine Asia (GDMA). In return for dinners, hotel rooms, prostitutes, and cash, among other items, these individuals helped defraud the U.S. Navy out of tens of millions of dollars.

    Francis now comes before the Court to be held accountable for orchestrating and overseeing a years-long bribery and corruption campaign that, for all practical purposes, engulfed a generation of U.S. Navy command staff. For his part, and considering his later flight weighed against his unprecedented, years-long cooperation with

authorities, the United States recommends Francis be sentenced to 140 months in prison.

Section 3553(a) requires "a sentence sufficient, but not greater than necessary," to reflect the seriousness of the crime, promote respect for the law, punish justly, deter crime, protect the public, and give Francis needed training or treatment. 18 U.S.C. § 3553(a)(2). The statute enumerates factors that must be considered: the sentencing guidelines, the offense, the defendant's background, the purposes of sentencing and sentences available, unwarranted disparities, and any need for restitution. 18 U.S.C. § 3553(a).

**Sentencing Guidelines**

The initial step is an accurate calculation of the guideline range without departures. *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007); see *United States v. Mohamed*, 459 F.3d 979, 986-87 (9th Cir. 2006). In the Sentencing Addendum filed separately, the parties have agreed to the following sentencing guidelines applicable to all four cases:

**Group One - Bribery:**
| | |
|---|---|
| Base Offense Level [USSG § 2C1.1(a)(2)] | 12 |
| Special Offense Characteristics – More than One Bribe [USSG § 2C1.1(b)(1)] | +2 |
| Value of Benefit Received (more than $9,500,000 but less than $25,000,000) [USSG §§ 2C1.1(b)(2) and 2B1.1(b)(1)(K)] | +20 |
| Offense Involved Public Officials In High-Level Decision-Making and Sensitive Positions [USSG § 2C1.1(b)(3)] | +4 |
| Obstruction of Justice [USSG § 3C1.1] | +2 |
| **Total (Bribery Group)** | **40** |

```
        Group Two – Fraud:
        Base Offense Level [USSG § 2B1.1(a)(2)]            6

        Special Offense Characteristics –
        Loss in excess of $20,000,000
        [USSG § 2B1.1(b)(1)(K)]                           +20

        Substantial part of the scheme committed
        overseas, and use of sophisticated means
        [USSG § 2B1.1(b)(10)(B) and (C)]                   +2

        Organizer/Leader [USSG § 3B1.1(a)]                 +4

        Obstruction of Justice [USSG § 3C1.1]             +2
        Total (Fraud Group)                               34
```

Pursuant to USSG § 3D1.4, the combined offense level is determined as follows:

```
        Highest Offense-Level [Bribery Group]             40
        Addition of Fraud Group                           +1
        Total Combined Offense Level                      41

        Acceptance of Responsibility [USSG § 3E1.1]       -3

        Combination of Circumstances [USSG § 5K2.0]       -1

        Final Offense Level                               37
```

These sentencing guidelines, as agreed to by the parties, account for the underlying criminal conduct charged in Francis's four cases. They do not, however, consider his cooperation with authorities once captured.

**Francis and the Corruption**

As the Chief Executive Officer of GDMA, Francis oversaw ship husbanding for the U.S. Navy for over 25 years. Starting in approximately 2004 and continuing through his arrest in September 2013, Francis and numerous Naval officers conspired to provide Francis and GDMA employees with internal, proprietary U.S. Navy information about competitors'

3

pricing, performance, and bids for U.S. Navy contracts; GDMA's performance and billing improprieties; and the U.S. Navy's internal deliberations about ship husbanding issues generally. But U.S. Navy officers and others went further — divulging classified information about the U.S. Navy's scheduling of ship and submarine port visits in the Seventh Fleet's area of responsibility.

Armed with this information, Francis and GDMA employees influenced the scheduling and selection of "fat revenue GDMA ports" such as "Phuket, [Laem Chabang, Thailand], [Port Klang, Malaysia] PKCC, and now Kota Kinabalu" for U.S. Navy aircraft carriers and other ships. Trying to keep ahead of being exposed and end his bilking of U.S. coffers, Francis compromised the Naval Criminal Investigative Service in the form of Special Agent John Beliveau. The total actual loss to the U.S. Navy exceeded $20 million.

The price for this betrayal: expensive dinners, liquor, hotel rooms, luxury goods, cash, and prostitutes. Francis oversaw it all and delivered these bribes personally time and again.

A Malaysian citizen living in Singapore with incredible wealth and foreign and American contacts, Francis could have remained untouched. But his greed was boundless. In September 2013, Francis was lured to the United States by the prospect of a massive contract worth millions. Instead of scoring another contract, he was arrested.

Fourteen months after his capture, Francis pled guilty to conspiracy, bribery, and fraud charges on behalf of himself and GDMA. The underlying plea agreement included a 37-page factual basis. Francis

admitted to presiding over a massive criminal scheme involving "scores" of U.S. Navy officials and more than $20 million in fraudulent loss to the U.S. Navy:

> GDMA, Francis, and other GDMA employees maintained corrupt relationships with scores of U.S. Navy officers and employees and federal employees…. In the aggregate, … GDMA and Francis gave their public official co-conspirators millions of dollars in things of value including over $500,000 in cash; hundreds of thousands of dollars in the services of prostitutes and associated expenses; hundreds of thousands of dollars in travel expenses, including airfare, often first or business class, luxurious hotel stays, incidentals, and spa treatments; hundreds of thousands of dollars in lavish meals, top-shelf alcohol and wine, and entertainment; and hundreds of thousands of dollars in luxury gifts, including designer handbags and leather goods, watches, fountain pens, fine wine, champagne, Scotch, Kobe beef, Spanish suckling pigs, designer furniture, Cuban cigars, consumer electronics, ornamental swords, and hand-made ship models.
>
> In return, Francis admitted that U.S. Navy personnel and command staff provided:
>
> - classified information about the U.S. Navy's scheduling of ship and submarine port visits in the Seventh Fleet's area of responsibility;
>
> - other internal, proprietary U.S. Navy information, including information about competitors' pricing and performance, information about competitors' bids for U.S. Navy contracts, information about the U.S. Navy's internal deliberations about ship husbanding issues generally, about GDMA's performance and potential billing improprieties specifically, and information about NCIS and U.S. Navy investigations into GDMA's practices;
>
> - favorable evaluations and recommendations to others within the U.S. Navy; and
>
> - the exercise of the [U.S. Navy] co-conspirators' position and influence … to benefit GDMA, including by the award of U.S. Navy contracts to GDMA, by the scheduling and movement of U.S. Navy ships to various ports favored by GDMA, and by the advocating for and advancing GDMA's interests….

This Court is intimately familiar with the details of the bribes and corruption overseen by Francis from the months-long trial with weeks

of testimony from coconspirators, and from the numerous guilty pleas and sentencings of U.S. Navy personnel and others.[1]

**Flight to Avoid Sentencing**

After pleading guilty, Francis remained in custody until December 2017, when he was eventually release on a medical furlough following extensive pretrial-detention litigation. This Court held regular hearings and continuously reviewed his furlough until, when it was clear that his sentencing was imminent, Francis fled.

On September 4, 2022, in advance of his forthcoming sentencing hearing, Francis removed the GPS bracelet from his ankle, crossed the border into Mexico, and ultimately made his way to Venezuela. He was eventually returned to the United States in December 2023.

Francis has since agreed to plead guilty to failing to appear for his sentencing as ordered, in violation of 18 U.S.C. § 3146(a)(1). See Exhibit 1 [signed plea agreement] and 2 [underlying information].

**Cooperation**

Francis's massive scheme to defraud the United States over many years and his inveterate bribery and corruption of the highest levels of the U.S. Navy were aggravated and egregious. By contrast, once caught

---

[1] Some of those that have pleaded guilty and later been sentenced by this Court include: Supervisory Special Agent John Beliveau; Rear Admiral Robert Gilbeau; Captain Michael Brooks; Captain Jeffrey Breslau; Captain David Haas; Captain Jesus Cantu; Colonel Enrico Deguzman; Commander Michael Misiewicz; Commander David Kapaun; Commander Troy Amundson; Commander Jose Sanchez; Commander Donald Hornbeck; Lt. Commander Gentry Debord; Lt. Commander Daniel Dusek; Lt. Commander Bobby Pitts; Lt. Commander Edmond Aruffo; Lt. JG Todd Malaki; Chief Warrant Officer Robert Gorsuch; Master Chief Petty Officer Ricarte David; Chief Petty Officer Brooks Parks; Logistics Specialist Dan Layug; Paul Simpkins; Alex Wisidagama; Neil Peterson; Raja Shamsa; and Pornpun Settaphakorn.

and having pleaded guilty, Francis engaged in an equally unparalleled campaign to cooperate with authorities.

Less than two weeks following his arrest, Francis met for two days of debriefs. For more than five years, Francis continued to debrief with investigators — meeting more than 50 times to discuss a level of corruption that the U.S. Navy had never seen before.

Francis provided detailed information on hundreds of individuals, from petty officers to admirals, including captains, commanders, Vice Admirals, and Rear Admirals. In addition to sitting for debriefs, he supplied through his attorneys the GDMA servers and hardcopy documents, financial records, photographs, dinner menus, entertainment receipts, Bravo-Zulu messages, hotel and travel records, and Navy contracting documents.

Information provided to agents about the scope of the bribery and fraud schemes, and the identity of those involved, was corroborated by multiple other sources. These included the testimony, sworn statements, and guilty pleas of co-conspirators; U.S. Navy emails, contracts, and invoices; and third-party records (from Gmail, airlines, banks, credit card companies, hotels, and other third-party entities).

To pick just one type of bribe, at least a dozen U.S. Navy personnel admitted under oath to accepting prostitutes from Francis in exchange for taking official acts.[2]

---

[2] See Plea Agreements of: John Beliveau, Daniel Dusek, Todd Dale Malaki, Michael Vannak Khem Misiewicz, Paul Simpkins, Gentry Debord, Michael George Brooks, Troy Amundson, David William Haas, Jesus Vasquez Cantu, Jose Luis Sanchez, and Donald Hornbeck. See also recorded statements introduced at trial of David Newland ("some girls showed up" to the MacArthur Suite, though he "did not partake") and James Dolan (Pegasus Club event in Thailand was first time he "sexually engaged" with a woman supplied by Francis).

7

Sworn testimony by conspirators also corroborated the physical and electronic evidence that Francis divulged. For example, emails, photographs, and menus supplied by Francis and his attorneys were corroborated at trial by percipient witnesses – including Edmund Aruffo, Steven Barney, Jesus Cantu, Edward "Chip" Zawislak, Jeffrey Rathbun, Alexander Gillett, and Stephen Shedd. Each testified about emails sent or received, as well as to the authenticity of other documents, of which they had personal knowledge.[3]

Francis and his legal team provided documentation and physical evidence on hundreds of occasions, and compiled chronologies with supporting documentation of the corruption he oversaw. Beyond that, Francis "repatriated" classified material unlawfully provided by US Navy officers, provided supporting documentation for extradition of GDMA employees, and testified by deposition in a court-martial.

Nearly three dozen defendants (including Francis and GDMA) were federally charged in criminal cases. Two others were criminally charged in foreign jurisdictions (Alex Gillet in Australia and Shannon Kaur in Singapore).

The U.S. Navy also undertook discipline for those not charged in federal criminal court. Four individuals were subject to General Courts

---

[3] For example, Aruffo's testimony covered approximately 90 documents separately authenticated as GDMA business records. Many were emails he personally sent or received. Others were photographs of people Aruffo knew and others were GDMA payment vouchers and invoices for events he personally attended or arranged. Cantu admitted nearly 20 exhibits, consisting of emails to and from him, emails referencing events or people he knew about, and photos from events he attended. Other witnesses confirmed that emails certified as GDMA business records were accurate emails they sent or received. Navy Judge Advocate General Stephen Barney discussed an ethics email he wrote. Steven Shedd admitted at least a dozen emails he had written or received. Edward "Chip" Zawislak discussed emails he testified were true and accurate copies of emails received in his military email account. Alexander Gillett discussed emails he sent from his "dingo11" Cooltoad account.

8

Marshal and four more received Non-Judicial Punishment. Nine individuals received Secretarial Letters of Censure, including four Captains and five Admirals. Three Admirals received Non-Punitive Letters of Caution. Ultimately, over 600 individuals have been referred by the investigative team to the Navy Consolidated Disposition Authority (CDA), which was convened "for possible administrative and disciplinary actions over Navy personnel relating to the investigations of misconduct associated with Glenn Defense Marine Asia (GDMA)." See CDA Appointment Letters at https://www.ncis.navy.mil/Media/Reading-Room/.

The U.S. Navy, as an institution, has also responded to the findings of the investigation as well. "Our behavior, as an organization and as individuals, must signal our commitment to the values we so often proclaim," wrote Chief Naval Officer Admiral John Richardson. "As senior leaders, our personal conduct, and the example it sets, are essential to our credibility."

As Rear Admiral Sawyer succinctly stated:

> [The] U.S. Pacific Fleet is charged with the care and safety of 97,000 Active Duty, 9,400 Reservist and 21,000 Navy Civilians supporting over 199 ships, submarines and 1,127 aircraft…. We are a Navy built on trust and integrity and we demand behavior that reflects our values of honor, courage, and commitment. … The Glenn Defense Marine Asia scandal and the misconduct of those convicted, breached this trust within the Navy lifelines and eroded the public's confidence in the U.S. Navy.
>
> - P.G. Sawyer, Rear Admiral, Deputy Commander, U.S. Pacific Fleet, U.S. Navy, letter to the Court

Once the corruption was exposed, Congress began parallel proceedings focused on the U.S. Navy's contracting practices, as well as on impact readiness, operations, and information security because of Francis and GDMA's corruption. The U.S. Navy later instituted significant revisions to its contracting practices.

9

It is undeniable that Francis's cooperation, corroborating years of investigative efforts before and after his arrest, substantially assisted the United States.

**CONCLUSION**

In light of the aggravated nature and circumstances of this offense, the history and characteristics of Francis, his flight to avoid sentencing, and considering his prior, years-long cooperation, the United States recommends a sentence of 140 months' custody, a $250,000 fine, three years of supervised release, $20 million in restitution to the U.S. Navy, and a $400 special assessment.

Perhaps a harsher sentence would be justified given Francis's egregious and prolonged criminal conduct, as well as his violation of the Court's trust with respect to his release on medical furlough. But the substantial assistance provided by Francis cannot be ignored, and the degree and significance of his cooperation cannot be overstated regardless of what one thinks of the individual or his underlying criminal conduct.

The recommended sentence promotes respect for the law at home and abroad, as well as provides just punishment and the necessary deterrence to those in and out of uniform who may be considering a similar course of conduct.

DATED: October 15, 2024.                    Respectfully submitted,
                                            TARA K. MCGRATH
                                            United States Attorney

                                            /s/ Fred Sheppard
                                            Fred Sheppard
                                            W. Mark Conover
                                            Assistant U.S. Attorneys